UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANDREA MACALUSO,

                           Plaintiff,                       **ORDER**
                                                       CV 05-0823  (ADS)(WDW)

            -against-

KEYSPAN ENERGY and its subsidiaries,
and EDWARD VANGULDEN, in his
individual and official capacities,

                          Defendants.
--------------------------------------------------------X
**WALL, Magistrate Judge:**

     Before the court are two applications. The first is a motion by the defendants for

sanctions pursuant to Rule 37, seeking a recommendation of dismissal of the complaint. Docket

Entry [40][1]. The second is an application from plaintiff's counsel, docketed as a "Motion for

Recusal and Related Relief," and captioned as an "Affirmation/Memorandum of Plaintiff's

Counsel in Support of Application for Relief from Prior Orders, Recusal Due to Conflict of

Interest and Appearance of Impropriety." DE [59]. For the reasons set forth herein, the

defendants' Rule 37 motion is denied to the extent that it seeks dismissal as a sanction for

discovery abuses, but is granted to the extent that monetary sanctions in the form of attorneys'

fees and costs, to be paid by plaintiff's counsel, Ruth Pollack, and not by the plaintiff herself, are

awarded. Plaintiff's counsel's application is denied in its entirety.

     Ms. Pollack is ordered to serve a copy of this Order on her client, Andrea Macaluso, no

later than April 6, 2007, with proof of service to be filed with the court by ECF on the date of

service. This case is deemed trial ready.

---

       [1]References to Docket Entries are set forth as "DE [#] in the text of this Order.

# BACKGROUND

Both the motion and the application by plaintiff's counsel, Ruth Pollack[2], must be viewed in the context of a detailed history of the course of discovery in this litigation, so that the remarkable failure of Ms. Pollack to comply with orders of this court or to prosecute this action in a timely manner can be fully understood. The action was commenced in February 2005, asserting claims of sexual harassment and wrongful termination against defendants KeySpan Energy and Edward Van Gulden. The plaintiff, Andrea Macaluso, has been represented from the outset by Ruth M. Pollack, and the defendants by John F. Hastings, Phillip R. Scott, and Shanell Parrish-Brown, in-house lawyers for defendant KeySpan, as well as by James Ryan, who entered an appearance on August 8, 2006, and other lawyers from Mr. Ryan's law firm, Cullen and Dykman, LLP, including Thomas B. Wassel.

## 1.) The Discovery Process, and Plaintiff's Repeated Failure to Comply with the Court's Orders and Deadlines Regarding Discovery:

On May 26, 2005, the undersigned So Ordered the parties' proposed joint discovery plan, which, *inter alia*, established February 15, 2006 as the discovery deadline, allowing the parties nine months in which to complete discovery. On June 16, 2005, the defendants docketed their Rule 26(a)(1) disclosure, incorrectly described in the docket as Requests to Admit. DE [9]. The defendants served their First Set of Interrogatories and First Request for Production of Documents on August 30, 2005. *See* DE [10]; DE [40-2, ¶4 & Ex. C]. In October 2005, the defendants served a notice for the deposition of the plaintiff, but did not conduct the deposition at that time because they had not received responses to their outstanding discovery demands. In

---

[2]For reasons explained in the Discussion section, *infra*, the court treats the application as one from Ms. Pollack, and not from the plaintiff, Andrea Macaluso.

fact, the defendants assert, and the plaintiff does not deny, full responses to those demands were not forthcoming until September 2006, more than a year after they were served. *See* DE [43-1, ¶17].

The court did not hear anything from the parties until February14, 2006,[3] one day before the discovery deadline was set to expire, when the defendants filed a letter motion seeking a sixty day extension of time to complete discovery, based on the plaintiff's failure to respond to the defendants' discovery demands. DE [10]. In their letter, the defendants reported that there was an ongoing arbitration regarding this matter. On February 16, the undersigned scheduled a conference for February 21, 2006. On February 17, two days after the discovery deadline had passed, the plaintiff filed a cross motion for an extension of time to complete discovery "due to arbitration delay." DE [11]. She stated that the parties had been in two arbitrations, but that discovery should now proceed and asked for a "reasonable enlargement." Neither party had previously contacted the court to inform the undersigned that the matter was in arbitration or to seek a stay of discovery. The conference took place on February 21, and Ms. Pollack, along with defense counsel - Shanell Parrish-Brown and John Hastings- attended. The undersigned extended the discovery deadline by more than four months, to June 30, 2006 and adjourned the pretrial conference from March 16 to July 11, 2006. DE [12].

On May 30, 2006, more than three months after the conference and one month prior to the extended discovery deadline of June 30, the defendants made a motion to compel, asserting that the plaintiff still had not responded to the discovery demands served in August 2005, nor had

_____

[3]The letter docketed on February14, 2006 was mistakenly dated January 19, 2006 on its face.

a deposition of the plaintiff been scheduled despite notice having been served on her. DE [13]. Defense counsel stated that, despite voice mail and email messages to Ms. Pollack in April, they had not heard back from her at that time. They also reported that an arbitration decision issued on May 4, 2006 had reinstated Macaluso's position at KeySpan but denied her back pay for the 19 months she had been out of the job. Defense counsel further reported conversations with Ms. Pollack during the week of May 15, in which they requested that Macaluso be produced for her deposition by June 8. Ms. Pollack, they reported, told them that the discovery responses would be faxed to them by May 19, but they were not sent. At some point, Ms. Pollack told Mr. Hastings that she was picking a jury on May 22 and that the discovery responses would be delayed. On May 23, Mr. Hastings stated, Ms. Pollack told him that she was busy with a trial and would not give him a date by which the outstanding discovery responses would be produced, nor a date for Macaluso's deposition. Thus, the defendants asked the court to compel discovery responses by June 8, 2006 and asked further that the plaintiff's deposition be held on June 15, 2006.

The court cannot report Ms. Pollack's version of the facts as set forth by Mr. Hastings in his May 30 letter motion, because that motion was unopposed by the plaintiff. On June 13, two weeks after the letter motion was docketed, the undersigned granted it, both on the merits and as unopposed. DE [14]. The order directed the plaintiff to produce the discovery responses, which were by then more than eight months late, by June 21, 2006 and to appear for a deposition by July 7, 2006. The July 11, 2006 pretrial conference was converted to a status conference. As of the filing of the defendants' letter on May 30, with one month remaining until the discovery deadline expired and with the arbitrations concluded, the plaintiff had apparently failed to serve

any discovery demands of her own.

On July 7, Ms. Macaluso appeared for her deposition, apparently having produced some of the discovery responses ordered by the court, but, according to the defendants, not a complete response. The parties agreed to have a second day of deposition. DE [16, p.2]. A status conference was held on July 11, 2006, attended by Ms. Pollack and Mr. Hastings. The plaintiff was ordered yet again to produce all outstanding discovery responses, this time by July 31, 2006, and all depositions were ordered to be completed by August 31, 2006. DE [15]. At the conference, Ms. Pollack confirmed that although the discovery deadline had passed on June 30, she had not yet served any of the plaintiff's discovery demands. On July 11, the discovery deadline having been again extended, the defendants served their Second Request for Production of Documents. *See* DE [43-1, ¶10].

On August 2, 2006, the defendants filed a letter motion, informing the court that the plaintiff had again failed to produce her responses to the outstanding discovery requests, two of which had been served nearly a year earlier, despite the repeated orders of the court that she do so. DE [16]. The defendants sought a default judgment[4] pursuant to Rule 37. On Monday, August 7, the plaintiff filed a motion for an extension of time to respond to the Rule 37 motion, stating that she had been engaged in court-directed depositions in Albany, and could not "compile a cogent response to the unnecessary application of the defendants (Doc.16) within the days [sic] of Local Rule 37.3(1)." She asked that she be given until Friday, August 11 to respond and to "seek dates for all parties' depositions." DE [17]. Her response, she stated, would be a

---

[4]It is not clear why, since it was the plaintiff who was allegedly at fault, that the defendants phrased the relief sought as entry of default, as opposed to dismissal of the complaint.

"more detailed and appropriate response to lay the issues to rest."

On August 8, a Tuesday, the undersigned granted the plaintiff's motion for an extension of time, directing that opposition to the defendants' motion must be filed no later than close of business on Friday, August 11, 2006. It was not. Instead, it was filed at 10:42 p.m. on that date, with an explanation by Ms. Pollack that it had been filed "slightly after close of business" due to an ECF issue. DE [19]. Given that "close of business" is commonly understood to mean 5:00 p.m., a filing at 10:42 p.m. can hardly be described as being "slightly after close of business." Two days later, the defendants filed another document, described in the docket as a "motion to dismiss." DE [20].

On August 15, the undersigned issued an order (DE [21]) addressing Docket Entries [16] (the defendants' motion for a default judgment), [19] (Macaluso's late-filed response to that motion), and [20] ( the defendants' second filing, docketed as a motion to dismiss). The court noted, first, that the ECF issue referenced by Ms. Pollack as a reason for her late filing had, according to the Clerk's Office, been resolved at approximately 4:45 p.m. on August 11 and that Ms. Pollack was well aware that her ECF account was functional at that time.[5] The court thus found Ms. Pollack's explanation for filing her papers more than five hours late to be disingenuous at best. The submission also violated the Local and Individual Rules, inasmuch as it was four pages in length. For these reasons, the opposition was rejected and the court announced its intention to treat the Rule 37 motion as unopposed. The court also noted that the second "motion to dismiss" was not a motion at all, but a reply that was incorrectly docketed.

---

[5]Chambers staff contacted the Clerk's Office, which confirmed that, while there had been a problem with Ms. Pollack's password, that problem was resolved, with her knowledge, at 4:45 p.m. on August 11.

The August 15 order recounted the plaintiff's repeated failures to comply with previous orders, but concluded that the plaintiff would be given a final opportunity to prosecute her case. She was ordered to fully respond to the both the first and second document demands no later than August 25, 2006 and to appear for the completion of her deposition no later than September 7, 2006. The defendants' Rule 37 motion (DE [16]) was denied, but the undersigned warned the plaintiff that if she failed to comply with the orders, I would recommend to District Judge Spatt that the case be dismissed for the plaintiff's failure to comply with court orders and failure to prosecute.

On Friday, August 18, 2006, the defendants filed a motion seeking an extension of time to complete discovery and asking that the plaintiff be precluded from deposing the defendants and employees of KeySpan. DE [22]. The defendants reported that they had received deposition notices for defendant Edward VanGulden and non-party KeySpan employees Ms. Zazzarino, Mr. Romano and Mr. Guckenburger by fax that morning, noticing the depositions to take place between Thursday, August 24 and Wednesday, August 30. They argued that such short notice was "patently unreasonable under the circumstances," inasmuch as the plaintiff had waited until 13 days before the close of discovery to notice the depositions, despite having had 18 months, since the inception of the lawsuit, in which to do so. The defendants also stated that both attorney and witness vacations would be impacted. They recounted plaintiff's failures to comply with discovery demands and the court's orders, and asked that she be precluded from deposing the defendants at all. In seeking yet another extension of the discovery deadline, they noted that on August 16 the plaintiff had served documents on them in response to the first demand for documents, but that the production had included no indication of what specific demands the

documents corresponded to, and they awaited her further court-ordered production on August 25 to clarify the earlier production. That production never occurred.

The court waited until Tuesday, August 22 for a response from the plaintiff and then, because of the proximity of the dates, issued an order vacating the deposition notices, reiterating the plaintiff's court-ordered production as set forth in the August 15 order, and staying discovery other than plaintiff's court-ordered responses. The plaintiff's opposition to the August 18 motion was not late; the court simply had to take immediate action. The order did not preclude the plaintiff's deposition of the defendants and their witnesses, but concluded that "[a]t the conference on September 12, firm deadlines will be set for the completion of discovery, including the cancelled depositions." DE [23].

The next day, August 23, the plaintiff filed an "Emergency Motion for Extension of Time to file Response to Motion of Defendants re: discovery." DE [24]. She asked for a one day extension - until August 24- to allow her to file opposition to the defendants' motion of August 18. Inasmuch as the depositions were scheduled to commence on August 24, it is unclear how Ms. Pollack thought that a response filed on that day would have been of any use in resolving the issue of whether the depositions should be cancelled. It is equally unclear why she made the motion at all, in light of the court's order of August 22. The "emergency" motion was denied as moot by electronic order docketed on August 24. The court noted that the defendants' motion had already been decided, as Ms. Pollack should have seen on the docket when she made her emergency motion, but also indicated that she would have an opportunity to present her suggestions for completing discovery at the conference on September 12.

On August 30, the defendants moved to "correct" the court's order of August 15 and to

renew their earlier Rule 37 motion. DE [25]. They reported that the plaintiff had failed to comply with any of the orders directing her to complete all of her outstanding discovery obligations, including the most recent one of August 15 that required production by August 25, an order that had been reiterated in the order of August 22. They indicated their intention to raise the issue of dismissal, which the plaintiff was previously warned would be the result of her failure to comply, at the September 12 conference. They noted that pursuant to the August 15 order, the plaintiff's deposition was to take place on or before September 7, but they asked that the September 7 deadline be put off until the plaintiff fully complied with her discovery obligations. Given the proximity of the date set for plaintiff's deposition, and the imminent Labor Day weekend, the court granted the motion on September 1, removing the requirement that Macaluso's deposition be completed no later than September 7, but reiterating that all other requirements set forth in that August 15 order remained in effect.

On August 31, the defendants moved for permission to videotape the plaintiff's deposition. DE [26]. On September 5, the plaintiff opposed that motion, noting her willingness to appear for the second day of her deposition on September 7, as ordered by the court, but charging that the defendants had not consulted with her about the dates when Macaluso or Pollack would be available or about the videotaping, thus violating the meet and confer rule. DE [27]. She argued that there was no reason to videotape and that videotaped depositions are "intimidating and the camera is be [sic] unfairly used to portray the party and her counsel in a false light." She accused the defendants of engaging in "a stall tactic," and employing a "ruse to prevent us from going ahead."

Despite having been ordered to produce her full responses to the defendants' First

Demand for Documents by three separate orders dated June 21, July 31, and August 25, and to respond to their Second Demands for Documents by August 25, that date passed without any responses from the plaintiff being served. Instead, on September 1, she served responses to the defendants' Second Demand for Production of Documents, and, on September 6, additional responses to the defendants' First Demand for Production of Documents, served on her on August 30, 2005, more than a year earlier. DE [43-1, ¶¶16&17].

On September 11, at 8:06 p.m., the night before the September 12, 11:30 a.m., conference that had been scheduled since August 15, Ms. Pollack electronically filed a letter motion seeking to adjourn the conference or move it to a later time, based on a conflict in the Southern District. DE [29]. Ms. Pollack stated that she had called the defense attorneys earlier that day, and they had taken "no position" on her request. She asked that the conference be rescheduled and reported that she was beginning a trial before Judge Spatt on September 18. She also stated that she had completed her discovery obligations, but that the defendants had not, and that she would have to make a motion because they ignored her meet and confer letters. No motion to compel by the plaintiff was, however, made at that time, nor at any other time.

The defendants responded to Pollack's request for an adjournment in a letter that was docketed at 10:25 a.m. on September 11, ten hours before Ms. Pollack's letter motion was filed with the court. DE [28]. The defendants stated that the conflict on which Pollack's eleventh hour request to adjourn was based had been scheduled on August 22, 2006, three weeks earlier, and after this court had scheduled the September 12 conference in this matter, but that she waited until the day before the conference to raise the issue. They took no position on the request, but did note alternate dates on which they were available. In a reply letter that is not permitted by the

Local or Individual Rules, Pollack accused defense counsel Ryan, *inter alia*, of using "desultory remarks with aplomb" [sic].  DE [30].

The undersigned did not receive Pollack's motion to adjourn until the morning of September 12, the day of the conference.  It is unclear why Ms. Pollack called the defendants early in the day on September 11, but did not file her motion with the court until after she knew chambers would be closed for the day.  Moreover, Ms. Pollack did not call chambers on the morning of September 12 to inquire if the conference had, in fact, been adjourned.  On September 12, the undersigned issued an order denying the untimely request to adjourn and noting Pollack's apparent assumption that her request would be granted as a matter of course, despite her failure to contact the court in a timely manner.  DE [31].  Defense counsel appeared for the conference, and the court indicated "no appearance" on the civil conference sheet for the plaintiff.  A new conference was scheduled for September 22, 2006, and the court noted that discovery remained stayed until that date.

On September 22, counsel for both parties appeared.  At the conference, the court granted the defendants' motion to videotape Macaluso's deposition and ordered the plaintiff to appear for her continued deposition on October 4, 2006 at 9:30 a.m.  DE [33].  A new discovery deadline of October 31, 2006 was set from the bench.  The defendants were ordered to respond to all outstanding discovery demands (which were made in early September and were not overdue) by October 31, 2006.  They were also ordered to comply with the previously served notices for deposition no later than October 31, 2006.  Dates for the defendants' depositions were not set,

the court leaving that to counsel.[6]   The deadline for initiating the dispositive motion process was extended to November 10, 2006, and the plaintiff was ordered to produce, by October 3, 2006, a copy of an allegedly pornographic videotape that she claimed had been given to her by her supervisor at KeySpan.  The pretrial conference was scheduled for November 16, 2006 at 10:00 a.m.  The court also gave the defendants permission, to the extent that permission was required, to move to dismiss pursuant to Rule 37, based on the plaintiff's habitual failure to comply with court orders regarding discovery.

On October 4, Macaluso appeared for her continued deposition, during which Ms. Pollack objected to certain questions and directed Macaluso not to answer.  As explained in a later motion from the defendants (DE [35]), Pollack objected to questions about two disciplinary actions against plaintiff, actions that are referred to as the "bagel shop incident" and the "side work incident."  The first incident resulted in a five day suspension of Macaluso and the second incident resulted in her being terminated, although she was later reinstated, without back pay, as a result of an arbitration.  When Macaluso was questioned about these incidents at her deposition, Pollack stated that there may have been a stipulation between Macaluso's union and KeySpan that precluded plaintiff's response and that the questions were outside the scope of the case.  She also claimed that Macaluso feared that answering them would jeopardize her personal safety.  According to the defendants, during the afternoon of the deposition, Macaluso became unable to continue and Pollack agreed to produce her for another day of questioning if the court

_____

[6]As it turned out, despite having nearly six weeks' warning that discovery would close on October 31, and despite repeated requests from the defendants for dates on which Pollack would be available to depose the noticed witnesses, the plaintiff did not serve any new deposition notices or attempt to reschedule the previously noticed depositions until 12:30 a.m. on Friday, October 27, seeking to depose only Carol Zazzarino.  *See* DE [43, p.3].

agreed. DE [35, p.2].

The parties called chambers from the deposition for a ruling, and they were told to call back the next day at 1:30, to give Ms. Pollack a chance to review documents that the defendants believed would resolve the objections. The next day, October 5, before the time for the conference call, defense counsel sent Pollack an email attaching those documents -- a signed settlement agreement from the bagel shop incident and part of the transcript from the side work incident -- both allegedly illustrating that there was no basis for Pollack's objections. DE [43-11]. The parties called chambers and spoke with one of the undersigned's law clerks. Ms. Pollack told the clerk that she had not seen the defendants' email and that she did not know of a date in October when the plaintiff could be produced for the continuation of her deposition, owing to Pollack's own prior commitments, despite the court's ruling that discovery would close on October 31.

At the conference with the clerk, the parties also discussed the depositions of the defendants' witnesses. Defense counsel stated he had sent Pollack a list of dates when they were available, but had not heard back from her. She stated that she did not know if she would be able to depose the defendants' witnesses in October, despite the fact that the deadline for doing so was October 31 and no request for an extension of that date had been made. She was advised by the clerk that, given the impending and final discovery deadline, she needed to make this case a priority. Pollack agreed that she would get back to defense counsel with proposed dates for all of the remaining depositions and that she would seek a modification of the undersigned's September 22 order that established the deadlines. As discussed *infra*, she did not do so. Five days later, on October 10, Pollack engaged in an email exchange with defense counsel, in which

she responded to Wassel's October 5 email and, for the first time, agreed to "review and respond" to the defendants' position on her deposition objections. DE [43-11]. She also accused the defendants of engaging in a fishing expedition and of bullying the witness, and advised them that issues that had been litigated in the arbitrations could not be relitigated. *Id.*

Wassel responded, saying that the questions related to specific allegations in the complaint in support of Macaluso's retaliation claim, and that Macaluso could either withdraw that claim or answer the questions. DE [43-12]. He also stated the defendants' intention to move for sanctions in regard to the deposition questions, and told Pollack that if she did not give him a date for Macaluso's deposition by the end of the day, he would arbitrarily choose a date in October so as to comply with the October 31 discovery deadline. Pollack responded by asking that he refrain from threatening her and stated that he had "consented to enlarge the discovery schedule." DE [43-14]. There is no mention in Pollack's email of whether the court might also agree to such an enlargement, and no such enlargement had been requested.

Three days later, on October 13, Wassel emailed Pollack once again, noting that she still had not provided the defendants with a date for Macaluso's deposition, nor had she sought the court's approval for an extension of the October 31 deadline, which, he indicated, the defendants intended to honor absent a ruling by the court. DE [43-15]. He also repeated that if he did not hear from her that day with a date for Macaluso's deposition he would notice a day in October without her input. *Id*.

By letter to James Ryan dated October 13, apparently an attachment to an email sent on that date at 8:52 p.m., Pollack informed Ryan that she had been "actually engaged in a case which settled and had to discuss rescheduling of a federal trial this morning" before she could

provide dates for the continued deposition. DE [43-16]. She further told him that his letters were "sophomoric and not in any manner cooperative or productive." She announced that Macaluso would be in the court's deposition room on Friday, October 20 at 10:00 a.m. and that the "balance of my dates for your clients will follow." Ryan responded by email at 10:25 p.m., stating "Thank you Ruth. See you Friday. Have a nice weekend." DE [43-17]. On October 18, Wassel emailed Pollack again, asking if she had given any more thought to the objections she raised in the earlier deposition, and stating his intention to seek a ruling from the court unless they could work it out. DE [43-18]. The record does not reflect any response from Pollack.

In fact, the defendants had already sought a ruling from the court. On October 10, 2006 the defendants filed a letter motion for sanctions and a ruling on the deposition dispute. DE [35]. They sought a ruling that she must answer the questions about the "incidents" or be precluded from asserting any retaliation claim; that if Pollack failed to complete the defendants' depositions by October 31, she be precluded from doing so; and that "this latest example of plaintiff's contempt for this Court's orders be added as a ground for defendants' motion to dismiss this case." They noted that, pursuant to the September 22 order, that motion had been served on plaintiff on October 6, and would be filed with the court pursuant to the undersigned's Individual Rules, specifically, the bundling rule that requires that all parts of a motion on notice- the moving papers, the opposition and the reply- be docketed together. The plaintiff filed no opposition to the letter motion of October 10 regarding her objections to the deposition questions.

On October 20, Ms. Macaluso appeared for her continued deposition, and plaintiff raised the same objections as at her earlier deposition. *See* DE [43-1, ¶27]. The parties appeared before the undersigned that same afternoon, at which time the undersigned overruled the plaintiff's

objections and ordered her to appear for one further full day of deposition for 7.5 hours on October 26, 2006. DE [36]. As of October 20, the plaintiff had yet to give the defendants dates for her availability for the completion of their depositions, which she fully knew had to be completed by October 31, seven business days later. Nor had she opposed the defendants' motion seeking preclusion of those depositions if they were not completed by October 31; nor had she moved for an extension of the October 31 deadline. The court, noting that the defendants had agreed to make their witnesses available on any date prior to the expiration of the discovery deadline on October 31, granted the defendants' unopposed motion of October 10, noting that the defendants had offered to make their witnesses available for depositions on any day prior to the close of discovery on October 31, and ordering that if the plaintiff failed to complete the defendants' depositions by that date, she would be precluded from doing so. DE [37].

Instead of promptly arranging for those depositions or making a motion to the undersigned for an extension of the deadline, on October 24, the plaintiff docketed a letter "Appealing Magistrate's Orders and Related Relief." DE[38]. The five page letter bore the addresses of both Judge Spatt and the undersigned, but the salutation line read only "Dear Judge Spatt," and the second sentence stated, "This is an appeal from an order of Hon. Magistrate J. William D. Wall dated October 20, 2006 . . ." Although the letter raised discovery issues that had not previously been before the court[7], and stated that, in addition to being an appeal, it was

_____

[7]For example, the plaintiff sought an extension of the October 31 deadline from Judge Spatt, although no such application had previously been made to the undersigned. She also listed the names of six new witnesses who had not been previously named and who she wanted to depose, and sought to reschedule the deposition of the four witnesses previously noticed or subpoenaed. Apparently, although she had only until October 31 to complete those depositions,

also "an omnibus motion seeking various related relief," the undersigned deemed it to be an appeal that sought only Judge Spatt's determination, given the docket description, the salutation, the statement that it was an appeal, and the fact that the undersigned is referred to throughout the letter in the third, and never the second, person. On October 25, the appeal to Judge Spatt was rejected for failure to comply with his individual rules, and, although the plaintiff was told she could refile the papers upon compliance with those rules, she did not do so, nor did she raise any of the discovery issues in a motion to the undersigned. [DE39].

As noted earlier, on Friday, October 27 at approximately 12:30 a.m., without prior consultation with defense counsel, the plaintiff faxed them a deposition notice scheduling the deposition of Carol Zazzarino for Monday, October 30. DE [43-1, ¶31]. She also gave them a copy of Ms. Zazzarino's deposition notice at the deposition of Theresa Frost, which was held on October 27. At that time, defense counsel told Ms. Pollack that there were already two other depositions scheduled for October 30, Ronald Macaluso's in the morning and Timothy Braddick's in the afternoon, but that they would proceed with all three depositions if Pollack got another attorney to work with her. Ms. Pollack left the Frost deposition with the issue unresolved.

Later that day (October 27), the defendants' filed their Rule 37 motion to dismiss as unopposed. DE [40]. The defendants explained that when they served the motion on Pollack on October 6, they included a cover letter telling her that her opposition was due on October 20, but no opposition was received. *See* DE [43]. In her October 24 appeal to Judge Spatt, Pollack

---

she had not yet given the defendants dates on which they could take place. In her appeal, she requested specific dates on which she wanted to conduct depositions, all of them after the October 31 deadline.

acknowledged in a footnote that "yet another time-wasting motion is pending, made returnable by defendants for November 3, 2006 before Magistrate Wall." As explained in the undersigned's order of November 3, 2006 (DE [44]), the defendants' computation of time was incorrect, as was the plaintiff's citation to November 3 as a return date, and the plaintiff's opposition was due on October 18. In any event, despite her full awareness of the motion, the plaintiff did not timely serve her opposition.

On October 30, Carol Zazzarino appeared, as did several defense counsel. Ms. Pollack arrived alone, stating that she would "fit in" Ms. Zazzarino when possible. DE [43-1, ¶31]. The defendants objected and the court was called. The parties were directed to try to fit in Zazzarino's deposition that day, and it commenced at approximately 3:45 p.m. Ms. Pollack stated that she would continue on that day only until 5:30 p.m. and that Ms. Zazzarino would have to come back the next day. The parties made another call to chambers, and the undersigned directed Zazzarino to return the next day for two hours. The Zazzarino deposition ended for the day on October 30 at approximately 6:00 p.m.

At 6:40 p.m. on October 30, Ms. Pollack left a voice mail message with chambers. In that message, a transcript of which is attached to this order, Ms. Pollack made serious allegations against defense counsel, saying that she was "being beaten up," "being harassed by three attorneys," and that "this group of attorneys has really pushed it to the point that I can't finish a deposition. They're obstructing, they are getting physical, and they're ganging up on me." Ms. Pollack stated that if she did not get help from the court she would "have to go to Judge Spatt or I'm going to have to go to some other outside source because [defense counsel's alleged behavior at depositions] is beyond what any attorney in our profession should have to go through."

Because the court could not and did not give weight to Ms. Pollack's *ex parte* allegations, and expecting that Ms. Pollack would immediately make a motion regarding those allegations, the court did not address the October 30 message at the time it was received. Ms. Pollack never followed up with a motion regarding the issues raised in her October 30 telephone message. The court was, however, sufficiently concerned by the tone and content of Ms. Pollack's message to accept her invitation to "quote me and use my tape, I really don't care," and make a record of the communication. The court releases it now, in response to the query raised in Ms. Pollack's recusal application as to the reasons why the court later ordered, after a second disturbing voice mail, that counsel could no longer communicate with chambers by telephone (*see infra*).

On October 31, the final day of discovery, the depositions of Ms. Zazzarino and of Jack LaGrassa were completed, and the defendants served their discovery responses on the plaintiff, pursuant to the court's earlier order. Discovery closed, without the plaintiff having deposed the named individual defendant, Edward VanGulden, without asking for an extension of the discovery deadline, and without ever having made a single motion to compel, despite repeated complaints that the defendants had not met their discovery obligations.

## 2.) Post-Discovery Activity and the Plaintiff's Belated Requests for Extensions of Time to Oppose the Rule 37 Motion:

On November 1, 2006, the plaintiff asked for an enlargement of time to file opposition to the motion to dismiss, opposition that was already two weeks late. DE [42]. Pollack asked to have until November 6, 2006 at 7:00 p.m. to serve her opposition, stating that she had "requested time to respond to the motion and have not received consent." She noted that the motion's return date was November 3, 2006 and that her request was a reasonable extension of that date,

incorrectly implying that her response was not due until November 3.  She also expressed her intent to cross move for an order striking defendants' answer or precluding them from offering evidence at trial or in future motion practice.  She criticized the defendants' Automatic Disclosure as listing only five witnesses and accused them of "bad faith behavior."  She did not, however, provide any explanation at all for why she had not timely responded to the motion in the first place, nor did she ever actually make a motion regarding the defendants' allegedly sanctionable discovery.

On November 2, the defendants responded, including a history of the discovery process to date, complete with numerous exhibits. DE [43].  Mr. Ryan flatly stated that Ms. Pollack's assertion that she had sought additional time from the defendants to respond to the Rule 37 motion was "an absolute lie," noting that she had been in the presence of five different defense attorneys during the previous week and had never made such a request.  The defendants also rebutted other of Ms. Pollack's assertions and sought sanctions, including dismissal of the action as sought in the motion to dismiss.  On November 3, 2006, the undersigned issued an order denying the plaintiff's request for an enlargement of time, both as untimely, the time to oppose having already passed, and on the merits, no good cause whatsoever having been given for any extension.  DE [44].

The court did not hear from Ms. Pollack again until January 2007, when she called chambers and told the law clerk that she would be making another request for an opportunity to enter opposition.  She was told to proceed in whatever way she saw fit.  A week later, she still had not filed a written request.  On January 18, the court, having reviewed the Rule 37 motion papers, and aware of the Second Circuit's view that even "in the case of attorney misconduct

such as gross negligence," dismissal might "amount to a windfall to an adversary" and should be resorted to only in extreme circumstances, decided to give the plaintiff another chance to file opposition papers. DE [46] (quoting *Litton Sys., Inc. v. American Tel. & Tel. Co.,* 700 F.2d 785, 828 (2d Cir. 1983) (internal citations omitted)). That opportunity was made conditional on Ms. Pollack's service of copies of certain papers on Ms. Macaluso, so that the client could be fully aware of the situation. The plaintiff was directed to file her opposition by 5:00 p.m. on February 9.

On January 22, 2007, after business hours, Ms. Pollack left another voice mail message with chambers, stating in part that she "would very much like the law clerk who wrote the order dated the 18th to call me briefly to speak with me about it" and asking again to "speak to the person who wrote this order." A transcript of that message is attached to this order. On January 25, the undersigned, disturbed by Pollack's two voice mail messages, issued an order barring further telephone communication by counsel in this matter. DE [47]. On January 29, in a letter addressed to both Judge Spatt and the undersigned, and, unlike the earlier appeal on October 24, with a salutation reading "Dear Judges Spatt and Wall," Pollack expanded her comments about the January 18 order, saying that the undersigned's order of January 18 "[u]nlike orders of this Court, [was] grammatically incorrect, does not capitalize words in accordance with the Blue Book or standard grammar." DE [48]. The implication of both Ms. Pollack's January 29 letter and her January 22 telephone message is that someone other than the undersigned issued the January 18 order. Indeed, in her recusal application, she refers to the January 18 order as an "order of uncertain origin." DE [59, ¶18]. That description, and her implications, are both disrespectful and absurd. The January 18 order, like all orders in this case and all other cases

assigned to me, originated with me.

In her letter of January 29, Pollack also asked anew for an enlargement of time to file opposition to the motion to dismiss and to appeal the order of January 18, stating that she had been "actually engaged" in another matter from January 11 to January 26 and that she had "fallen ill with the flu" on January 26 and had been "too ill to travel or to meet with her client." DE [48]. Had she not been actually engaged, she assured the judges, her "response would have been swift." In the letter, she accused the KeySpan attorneys of misrepresentations, cowardice, and other scurrilous acts. She also claimed that the January 18 order, which required her response by February 9, provided her with less than 10 days to respond, an erroneous computation of the timing, which actually gave her more than three weeks. Inexplicably, she asked for an extension of time to respond until Monday, February 5, four days sooner than her response was due. By order[8] dated February 2, the undersigned denied that request and retained the February 9 deadline. DE [49]. The appeal to Judge Spatt was rejected on February 2 as not complying with his individual rules. DE [51]. Once again, although the plaintiff was told she could refile the appeal in compliance with those rules, she did not do so.

Instead, on Friday, February 9 at 2:58 p.m., two hours and two minutes before her opposition was due, Pollack filed a "Final Motion for Extension of Time" to file her opposition and/or to appeal, this time asking to have until February 12 at 5:00 p.m., and claiming to have been ill. DE [52]. The letter was addressed to both Judge Spatt and the undersigned. She did not explain whether this was a new illness or a continuation of the illness that had started two

---

[8]Because, unlike the appeal in October, the salutation in this letter was to both Judge Spatt and myself, and because it requested, *inter alia*, the extension of a deadline I had previously set, I issued an order.

weeks earlier, as referenced in her letter of January 29, but she noted that she would provide a doctor's note under separate cover.[9]  On February 9, at 5:13 p.m., she also docketed a supplement to her "final" motion noting that the defendants had taken no position on her request.  DE [53].

The "final" motion was not, as it turned out, final.  On February 12 at 7:50 p.m., before the court had responded to her February 9 request, and three hours after the deadline she had requested and apparently assumed had been granted had passed, Pollack asked for yet another extension of time to respond to the motion to dismiss and/or to appeal, noting for the first time the "serious nature of the motion" and her "inability to complete it due to the sheer volume of dates and materials to review." DE [54].  She offered no further explanation for her failure to timely file her opposition, but did note, three and one half months after discovery had closed, that she and Ms. Macaluso had "discovered new witnesses in this case."  She concluded by informing the court that she "trusted" that defendants took no position on the latest request and that she would not hesitate to agree to the request if it had been made by the defendants, as she had "historically done here."

The defendants responded, noting that Pollack had not contacted them about the latest request and noting that they had never made a similar request that Pollack might historically have agreed to.  DE [55].  They further asserted that although Ms. Pollack had by then had the Rule 37 motion papers for four months, it was unclear why she had just realized that it was "serious" and would require some time to respond to.  By order dated February 13, 2006 the undersigned denied any further extensions and announced the intention to decide the motion to dismiss as

_____

[9]She did subsequently submit a note dated February 7, 2006 from Nurse Practitioner Michelle Craddock, stating that Pollack was seen and treated for URI.  DE [57-1].

unopposed.  DE [56].  The record does not reflect any rulings by Judge Spatt on the plaintiff's requests for extensions of time to appeal.

On March 6, 2006, Ms. Pollack filed a letter motion seeking to stay all activity in this case, including all court orders, to give her time to make a motion regarding an "extremely serious conflict of interest" of which she had become aware.  She attached a physician's note allegedly "documenting the legitimacy of her illness in February."  DE [57].  The court denied the request for a stay, noting that the plaintiff had provided no factual basis whatsoever for her request.  To the extent she announced her intention to make a motion, she was advised to consult the individual rules of the appropriate judge and to proceed accordingly.

On March 9, she filed her "Affirmation/Memorandum of Plaintiff's Counsel in Support of Application for Relief from Prior Orders, Recusal due to Conflict of Interest and Appearance of Impropriety," docketed as a "Motion for Recusal and Related Relief."  DE [59].  The defendants opposed that application, by affidavit of James Ryan filed on March 12.  DE [60].

The court has set forth this detailed history to illustrate the breadth of Ms. Pollack's failure to comply with orders and to meet deadlines in this action.  She obviously does not feel bound by any order of the court, and believes that it is her schedule alone that dictates when things will be done, not the Federal Rules, not the Local Rules, and not the court's directives.  Despite her serious complaints about defense counsel and their alleged dereliction, she has not made a single motion to compel, and despite her apparent outrage at several of my orders, she has not perfected a single appeal to District Judge Spatt.  In short, although she frequently describes her client's claims as unassailable and undeniable, she has done nothing to see that those claims are decided on their merits and everything to place a decision on the merits in severe

jeopardy.

With the background of this action now in place, the court turns to the plaintiff's, or more accurately, Ms. Pollack's, application for recusal and other relief, and to the defendants' motion to dismiss pursuant to Rule 37.

## DISCUSSION

### The Application for Recusal and Other Relief:

The court notes, first, the procedural defects in the "Affirmation/Memorandum of Plaintiff's Counsel in Support of Application for Relief from Prior Orders, Recusal due to Conflict of Interest and Appearance of Impropriety." It is docketed as a motion, but it does not follow the Federal, Local, or Individual Rules for any motion that the court knows of. It is not a letter motion. It is not a motion on notice with the requisite memorandum[10] of law and notice of motion. And, although Ms. Pollack refers to 28 U.S.C. §144, it does not include the party affidavit attesting to personal bias, and accompanying attorney's statement of good faith, that Section 144 requires. Instead, it consists solely of an affirmation by Ruth M. Pollack, filled with hearsay, unsupported allegations, accusations couched in rhetorical questions, non sequiturs, and threats that I will be reported to "the authorities" if I don't grant this motion and deny the defendants' Rule 37 motion. I will, nonetheless, address the allegations to the best of my ability.

Recusal motions are committed to the discretion of the judge who is being asked to recuse himself. *See Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1897). In making a determination, the judge "must carefully weigh the 'policy of promoting public

---

[10]Ms. Pollack's use of the word "Memorandum" in the caption of her Affirmation does not make it one.

confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.'" *Hoatson v. New York Archdiocese,* 2006 U.S. Dist. LEXIS 87877, *3-4 (S.D.N.Y. Dec. 1, 2006) (quoting *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir. 1988)).  Although litigants are entitled to an unbiased judge, they are not entitled to a judge of their own choosing, and a judge has as much obligation to deny recusal when it is not called for as he is to recuse when it is called for.  *See id.*

      The two primary recusal statutes are 28 U.S.C. §144 and §455, both of which are mentioned by Ms. Pollack in her Affirmation.  Section 144 provides for recusal where the "judge before whom the matter is pending has a personal bias or prejudice either against [a party] or in favor of any adverse party."  The statute requires that the party seeking recusal must file a "timely and sufficient affidavit" stating "the facts and the reasons for the belief that bias or prejudice exists," and it must "be accompanied by a certificate of counsel of record stating that it is made in good faith."  The affidavit must be legally "sufficient" to provide "fair support" for the charge of bias.  *Apple*, 829 F.2d at 333.  Procedural requirements under section 144 are strictly construed and failure to adhere to them can be grounds for denial of the motion.  *See Lamborn v. Dittmer,* 726 F. Supp. 510, 515 (S.D.N.Y. 1989).  As noted, the statute requires both a <u>party</u> affidavit and a certification of good faith by an attorney of record.  Ms. Pollack has provided neither.  In an effort to examine the merits of the application, the undersigned will, nonetheless, examine Pollack's affirmation for sufficiency, assuming, for the purposes of this application, that it was timely.

      Section 455 (a) requires that any judge or magistrate judge "shall disqualify himself in

any proceeding in which his impartiality might reasonably be questioned," and lists various circumstances that would lead to such disqualification. It is not entirely clear which of those circumstances Ms. Pollack believes applies here, but the court assumes she is relying, generally, on subsection (a) and on subsection (b)(1), which requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." The Second Circuit has held that Sections 144 and 455(b)(1) are to be construed in *pari materia*, that is, resolving any ambiguities in one of the statutes in light of the other statute, inasmuch as the two statutes relate to the same subject matter, holding further that although Section 455 does not require an affidavit of bias, where one is submitted by the movant it will be scrutinized for sufficiency as under Section 144. *Apple,* 829 F.2d at 333.

The application starts with a section entitled "THE UNREMITTING UNPROFESSIONAL CONDUCT OF THE DEFENSE." (All capitals in original). Several paragraphs of allegations about defense counsel and the defendants follow, including a claim that Ms. Macaluso has "suffered from bias and prejudice at the hands of defendants and its counsel[11]." Pollack Aff. ¶4. The recusal motion, she says, is the result of this bias and the defense counsel's "pattern of unremedied misconduct." The purported connection between defense counsel's behavior and the court's recusal appears to be Pollack's claim that she has made "repeated requests for assistance from the Court" that have gone unheeded. Pollack Aff. ¶4. The reference to these "repeated requests" is a mystery, inasmuch as she has never made a

---

[11]This is a curious allegation, to say the least. One would imagine that, if asked, Ms. Pollack would admit to being "biased and prejudiced" in favor of her client and against the defendants. Such "bias and prejudice," called "zealous advocacy," is at the heart of adversarial practice. Moreover, "bias and prejudice" against plaintiff by the defendants is irrelevant to the recusal application, which must demonstrate bias and prejudice by the judge.

single motion to compel or for sanctions, only repeated motions for extensions of time, most of them untimely.

Ms. Pollack states that the plaintiff has set forth "sufficient clear legal and factual basis for this Court's recusal," citing to 28 U.S.C. §§144 and 455. Pollack Aff. ¶5. She has not. The "facts and reasons" suggesting such bias and prejudice pursuant to Section 144, she states, are as follows:

1) James Ryan, defense counsel, like the undersigned, attended Fordham Law School.

2) James Ryan, defense counsel, is active in community service in Rockville Centre. Pollack Aff. ¶6. Although Pollack does not state it, the undersigned until recently lived in Rockville Centre.

On the basis of these two unsupported, hearsay "facts," she draws the incredible conclusion that "It would be reasonably assumed a close association between the defense and the Court exists here making it impossible for the Court to be as impartial as it must be." Pollack Aff. ¶6. Her conclusion that a close relationship leading to bias and prejudice exists when a judge and an attorney have attended the same law school (eight years apart[12]) and lived in the same community (assuming Mr. Ryan lives in Rockville Centre and doesn't simply do community work there), is a non sequitur of astonishing proportions, one that would be surprising even in a pro se submission, let alone from an attorney with years of experience. Although a judge is required to consider all "facts" provided by the movant on a motion pursuant to Section 144 as true for the purpose of ruling on their sufficiency, he "need not accept as fact

_____

[12]The court knows this fact only from Mr. Ryan's Affidavit in Opposition DE [60], inasmuch as the only connection between Mr. Ryan and the undersigned is Mr. Ryan's appearance before the court in this and other matters.

mere conclusory speculation which lacks any factual support." *Lamborn,* 726 F. Supp. at 516.

Ms. Pollack's assumption based on these facts lacks any support and does not provide a basis for

recusal.

Nor do her next allegations. She refers to "nonstop motion practice by the defendants"

and "no relief from this abuse" by the court. Pollack Aff. ¶6. "Is this a deep-seated favoritism?"

she asks. "A purposeful antagonism making it other than possible for my client to receive a fair

hearing of her case?" No, it is not. It is not clear whether Pollack is objecting to the number of

defendants' motions, or their success on those motions, but in either event, the motion practice

provides no basis for recusal. First, behavior by the defendants is irrelevant to the motion, which

looks to the judge's conduct and beliefs. Second, Sections 144 and 455 look primarily, with few

exceptions, to extrajudicial conduct, not conduct that arises in a judicial context. *See Liteky v.

United States,* 510 U.S. 540 (1994); *Apple,* 829 F.2d at 333.

If Pollack is relying on the defendants' success on their motions, her argument is equally

unavailing. Courts have held that "rulings made during the course of a case generally are not

regarded as evidence of bias, even if they appear to disproportionately favor one side." *Hoatson,*

2006 U.S. Dist. LEXIS 87877 at *5 (citing *In re Drexel,* 861 F.2d at 1314). Instead, as noted

earlier, in all but the "'rarest circumstances,' recusal will involve bias from extrajudicial

sources." *Id.* (quoting *Liteky v. United States,* 510 U.S. 540, 555 (1994)).

Pollack's additional "facts" purporting to demonstrate extrajudicial sources of bias,

presumably pursuant to 28 U.S.C. §455, are truly bizarre. She claims that KeySpan enjoys some

favored status in the courts, saying, without a hint of factual support, that it is rare for anyone

who sues KeySpan or LIPA to prevail. Pollack Aff. ¶8. She states that KeySpan "awarded

contracts in 2005 exceeding $23,000,000.00"  This "fact," she concludes, "is egregious enough to be pointed out that this company has been able to squash each and every claim of wrongdoing all of the time." *Id.*  The reason such a state of affairs is "permitted to continue," she states, is "obvious," and not a "statistical coincidence." *Id.*  It is not obvious to the undersigned.

Ms. Pollack next asserts that I and one of my law clerks worked for the same law firm prior to our employment in the court, and that, while in practice, I "specialized in precisely the areas at bar in this case and defended by Mr. Ryan and his staff attorneys in Cullen Dykman (now) Bleakley Platt, LLP and as also enumerated in Section 455." Pollack Aff. ¶¶8 & 9.  The specific link between Mr. Ryan's practice areas and my own advanced by Pollack is apparently her claim that before I took the bench I defended "individuals and corporations charged with violations of environmental and other regulatory laws."  Pollack Aff. ¶9.  Inasmuch as Mr. Ryan is described as specializing in "employment discrimination defense, sexual harassment defense, employment contracts and many other issues for KeySpan Energy," and my area of specialization is identified as "environmental and other regulatory laws," the affinity between Mr. Ryan and myself is apparently that we both have represented corporate defendants.  In yet another amazing leap of logic and common sense, Ms. Pollack states, alluding to Section 455, that Mr. Ryan's and my representation of unrelated corporate defendants "suggests, at the very least, a reasonable question regarding, or appearance of, partiality, the existence of a personal bias and/or prejudice, or personal (as opposed to judicial) knowledge of or investment in this case." *Id*.  In support of this allegedly "irrefutable" conclusion (*see* Pollack Aff. ¶9), Pollack cites to several cases, all of which denied the recusal motions at issue.  I will not even try to make sense of the ludicrous and unsupported allegation that KeySpan never loses any lawsuits or of Ms. Pollack's delusional

claim that my representation of corporate defendants provides a basis for recusal under section 455. Such claims are not only legally insufficient to support recusal, they are irrational.

In sum, the extrajudicial "factual" basis for recusal set forth by Ms. Pollack consists of the following: 1) Mr. Ryan and I are alumni of Fordham Law School; 2) Mr. Ryan is active in Rockville Centre community activities; 3) KeySpan is a large and powerful corporation that rarely, if ever, loses any lawsuits; 4) Mr. Ryan does defense work for corporate entities, including KeySpan, in the employment area; 5) while in practice, I defended corporations in environmental and other areas. To say that these facts do not provide a legally sufficient basis for recusal is an understatement.

Ms. Pollack moves on from extrajudicial reasons for recusal to specific allegations of judicial conduct in this lawsuit as evidence of bias, prejudice or conflict of interest. First, she demands an explanation for why an Affirmation of Actual Engagement dated November 12, 2006 that she filed by ECF has "disappeared" from the docket. Pollack Aff. ¶11. She attaches a copy of it to the hard copy of her recusal papers that she sent to chambers, although it was not electronically filed along with her Affirmation in support of recusal. My chambers has spoken to the District's ECF technical support staff about this issue, and has learned that Ms. Pollack never filed such a document in this case, although she did file a similar document in another case - *Chesney v. Valley Stream School District* (CV05-9454)- on November 12. Perhaps Ms. Pollack prepared the Affirmation for filing in this case; perhaps she thought she had docketed it. The fact is, however, that she did not do so. No one removed it from the docket because it was never

there, and its absence provides no basis for recusal[13].

She next raises an issue that is apparently of serious concern to her - my chambers' practice of not capitalizing the "c" in court.  Pollack Aff. ¶12.  However offensive Ms. Pollack may find this practice, which is, I assure her, a conscious decision, made with awareness that other people do capitalize, it is not a ground for recusal.  Nor are the other issues raised in this section of the Affirmation.  Pollack accuses the court of never "disparag[ing the] defendants for its [sic] time wasting and costly unfair and unprofessional tactics."  *Id.*  Why, she asks, "does the Court consistently allow this behavior to go unchallenged?"  *Id.*  The reason is that the defendants have not engaged in unfair and unprofessional tactics; Ms. Pollack has, in her persistent refusal to abide by court deadlines and orders.  Indeed, an allegation that Ms. Pollack makes against Mr. Ryan, while not true of him in this lawsuit, quite accurately describes her approach to litigation, that is, that she "clearly believes that whatever assertions [s]he makes in [her] letters and motions in this case automatically becomes fact."  *See* Pollack Aff. ¶13.

Ms. Pollack turns next to the order barring telephone calls from counsel.[14]  She demands an explanation for that order, and the court will provide one.  As recounted earlier in the

---

[13]  Moreover, Ms. Pollack's claim that the document's absence was "obviously calculated to conceal the fact that I was on trial for one month and had an 'extraordinary' reason to adjourn all activity in this case," is itself extraordinary.  First, it ignores that fact that, as of November 12, all of the deadlines in this case had already passed, and second, it reflects Ms. Pollack's erroneous belief that if she tells the court or her adversaries that she is otherwise engaged, "all activity" automatically stops.

[14]This is not the only case in which Ms. Pollack, as plaintiff's counsel, has been barred from communication with chambers by phone.  *See Burgie v. Euro Brokers,* (E.D.N.Y.) CV 05-0968 (CPS) (KAM).  In that case, Judge Sifton ordered that all further communications from counsel to Chambers should be in writing.  Further disturbing similarities between the Macaluso and Burgie matters, including Ms. Pollack's motions for recusal of both Judge Sifton and Magistrate Judge Matsumoto, are discussed *infra.*

Background section, Ms. Pollack left two inappropriate and disturbing voice mails with chambers after office hours. The first voice mail made serious, *ex parte* allegations against defense counsel and the second made offensive and groundless implied claims against myself and my chambers staff. *See* transcripts attached to this order. To avoid further inflaming an already overheated adversarial situation, I decided not to publicly comment on the first voice mail, but simply to ignore it, awaiting appropriate motion practice by the plaintiff on the charges it contained. No motion was ever made. The second voice mail, suggesting that the order of January 18 was "written" not by me, but by one of my law clerks acting without my approval, led to the decision that my chambers would accept no further telephone calls in this matter, but rely on written submissions only. Although defense counsel had left no inappropriate messages, and it was Ms. Pollack's behavior alone that prompted the order, it was applied to defense counsel as well. It provides no ground for recusal.

Ms. Pollack next returns to her argument that the defendants are remiss in their discovery obligations and that although she has repeatedly sought the court's intervention, it has been denied her. Pollack Aff. ¶¶15-22. The only explanation for certain orders adverse to the plaintiff, she suggests, is bias in favor of the defendants. As stated *supra,* rulings in a case seldom, if ever, provide a ground for recusal. Moreover, the exhaustive history of this litigation, set forth earlier, demonstrates that the court gave the plaintiff every benefit of the doubt, and every opportunity to prosecute her case, despite Ms. Pollack's repeated flouting of the court's orders and the Federal, Local and Individual Rules.

Her charge that the court has consistently failed to address complaints about defense counsel's allegedly bad behavior is nonsensical in light of the fact that she has not made a single

motion to compel or for sanctions that would have allowed the court to consider her charges in an appropriate context. She claims that she "cross moved for relief due to defendants' failure to comply with its obligations under Rule 26," but the docket reveals no such cross motion. Pollack Aff. ¶17. If she is referring to the appeal docketed as DE [38], as explained *supra*, that was an appeal to Judge Spatt, not a motion to the undersigned. If she is referring to the letter docketed as DE [42], that document was not a cross motion. Pollack docketed it as a motion for an extension of time to oppose the motion to dismiss and to cross move, and in the text of the letter, Ms. Pollack stated "I also intend to cross move for an order striking defendants' answer or precluding it from offering evidence at trial." An intent to make a motion does not a motion make. Nor is the recusal Affirmation a discovery motion. To the extent that the Affirmation in support of recusal seeks rulings on discovery issues, including her demand that "Of course, I must have the production of all witnesses by defendants immediately," (¶25) such relief is denied. The Affirmation is an entirely inappropriate context in which to seek such relief, and, in any event, discovery in this matter has been closed since October 31, 2006.

Ms. Pollack moves on to the "order of unclear origin," that is, the order of January 18, which required her to serve copies of that order and of the motion to dismiss on her client. Pollack Aff. ¶18. As stated *supra*, the suggestion that the January 18 order was issued by anyone other than the undersigned is ridiculous. The order was not of unclear origin. It originated with me, and was issued in the hope that Ms. Macaluso would be made fully aware of the way in which her lawsuit is being handled.[15] Because Second Circuit law regarding dismissal as a Rule

---

[15]This is another similarity between this case and *Burgie*. Judge Sifton's hearing regarding Ms. Burgie's awareness of Ms. Pollack's "difficulties" in managing that litigation is discussed *infra*.

37 sanction looks to whether the client had "notice" of her attorney's actions, the court sought confirmation that Macaluso did have such notice. *See, e.g., Litton Sys.,* 700 F.2d at 828. Ms. Pollack chose not to comply with the order, as is her wont. The January 18 order does not provide a ground for recusal.

Summing up her position, Ms. Pollack states that the "subterfuge of evading fact by stymieing plaintiff's ability to obtain discovery and get a fair trial and the comparably grinding scrutiny leveled upon my client and me requires me under these facts to ask for recusal. No attorney could operate professionally under such terms as in this case, with the constant threat of dismissal hanging over his or her head. This case has been conducted like a repeating Keystone Cop comedy." Pollack Aff. ¶24. While the court agrees that there has been unprofessional behavior by counsel in this matter, such behavior was not on the part of defense counsel, and Ms. Pollack has provided no ground whatsoever for recusal.

Ms. Pollack then threatens that if the court does not deny the motion to dismiss and allow this case to go to trial as soon as possible, she "will have no remedy other than to immediately report all of the abuse and misconduct we have witnessed here." Pollack Aff. ¶26. She will, she states, "forward this case and these facts to the appropriate governing authorities." *Id.* As a final flourish, she notes that "if the motion to dismiss is not denied, plaintiff will take such act as an admission that these facts prove the Court's bias. . ." The plaintiff can, of course, timely appeal any of my orders to Judge Spatt, and any of his orders to the Second Circuit, pursuant to the various rules that govern such appeals.

The application for recusal is denied as not only legally insufficient but as frivolous, indeed, in parts, irrational. It is nothing more than a desperate attempt to prevent the court from

granting the defendants' Rule 37 motion, where Ms. Pollack's own actions have placed her client in jeopardy of that result. That unopposed motion is determined on its own merits, *infra*. Ms. Pollack apparently believes that when a court does not automatically condone her every action or inaction, the reason must be bias instead of the natural result of the way in which she chooses to litigate. In this regard, the undersigned notes that this case is not the only one in which Ms. Pollack has been admonished for her repeated, and often untimely, requests for extensions and her disregard of deadlines and court orders.

Ms. Pollack's behavior in *Burgie v. Euro Brokers, Inc.*, CV05-0968, a case filed only days after the Macaluso matter, bears an alarming resemblance to her behavior in this matter. The docket in that case, as in this one, is filled with discovery orders that were ignored by Ms. Pollack, followed by numerous untimely requests for extensions and failures to appear. In *Burgie*, as here, the defendants moved for Rule 37 sanctions, including dismissal. On March 30, 2006, Judge Matsumoto issued an order denying dismissal, but awarding defense counsel $4,665 in fees and costs. *See* DE [71], reported at 2006 U.S. Dist. LEXIS 22433 (E.D.N.Y. Mar. 30, 2006).

Ms. Pollack appealed Judge Matsumoto's sanctions order, and, on February 1, 2007, prior to deciding that appeal, District Judge Sifton held a hearing, attended by both Ms. Pollack and her client, Maritza Burgie, to determine whether Ms. Burgie, with full awareness of the way in which her lawsuit was being prosecuted by Ms. Pollack, wished to continue with Pollack's representation. *See* DE [76, 77, & 136]. He advised Ms. Burgie that he was raising the issue so that the court "would not go through the entire case and then have to go look at it again because the lawyer – to determine whether the lawyer did an adequate job." DE [136, p.6] He explained

that Ms. Pollack had difficulty in representing Ms. Burgie, and that she had been penalized by Judge Matsumoto for disregarding discovery orders. Judge Sifton told Ms. Burgie about a previous report to the Grievance Committee for the Ninth Judicial District, in which Ms. Pollack was censured for failing to comply with orders of a court *(see In the Matter of Ruth M. Pollack, 268 A.D.2d 153 (N.Y. App. Div. 2d Dep't 2000))*, and referred to another case in this District in which Ms. Pollack had experienced problems (*see* discussion of the *Spinelli* matter, *infra)*. He mentioned an illness that Ms. Pollack had suffered in 2003 and 2004, and told Ms. Burgie that he thought she had a right to know about these matters and decide if she wanted Ms. Pollack to continue to represent her, giving her until February 27, the date of the hearing on Pollack's appeal of the sanctions order against her, to decide.

Ms. Pollack subsequently moved for the recusal of both Judge Matsumoto and Judge Sifton, by motion filed on February 26 at 10:56 p.m. DE [137]. The next day, at a hearing before Judge Sifton, Pollack reported that Ms. Burgie wished to continue to be represented by Pollack. Pollack argued that her handling of the case had been "superb and superlative," that any problems had been caused by defense counsel, that she and Ms. Burgie had been "ambushed" at the February 1 hearing, and that she suspected there had been some collusion between the court and defense counsel prior to the hearing. DE [140]. She levied the same charges that she has in this case - that everything was the fault of bullying defense counsel, that she had "begged" for deposition dates to no avail and had gotten no assistance from the court (despite, as here, having made no motions to compel) and that everything was being done to keep the merits of her client's case from a jury.

Judge Matsumoto denied the recusal motion as to her in an electronic order, and Judge

Sifton denied the motion for recusal as to him from the bench.  He also issued a written opinion, reported at 2007 U.S. Dist. LEXIS 13619 (E.D.N.Y. Feb. 28, 2007).  He noted Ms. Pollack's accusation that he had tried to "separate and alienate" her from her client, the same claim Ms. Pollack has made about my January 18 order.  Judge Sifton found that it is "mandatory for a court to make a party aware of the potential conflicts facing his or her attorney."  2007 U.S. Dist. LEXIS 13619 at *4.  He explained that Pollack's conduct in the case "involved matters of which the Court was obligated to ensure that the plaintiff herself was aware, both in her own interest and in order to avoid a collateral attack on the result of this litigation should it be unfavorable to the plaintiff."  *Id.*  This, of course, is the very concern that the undersigned has in this matter.

Further examples of Ms. Pollack's failure to obey orders and to meet deadlines abound. In another case in this District in which Ms. Pollack represented the plaintiff, Judge Seybert noted, on plaintiff's motion for reconsideration of the rulings of the District Judge previously assigned to the matter, plaintiff's failure to disclose prior applications as reflecting "little concern for candor to this Court." *Capone v. Patchogue-Medford UFSD*, CV 04-2947, DE [206, p.5].  On April 25, 2006, she nonetheless granted the plaintiff's motion for reconsideration and gave him additional time - until May 10, 2006- in which to oppose pending motions to dismiss, ruling that there would be no further extensions.  DE [206, pp.7-8].  Ms. Pollack, in a letter dated May 15, five days after her deadline to oppose had passed, told the court that she had not seen the April 25 order and asked for a further extension.  The court found Ms. Pollack's explanation that she had not seen the ECF bounce of the April order "difficult to credit," and found that "Plaintiff's counsel's neglect does not outweigh the prejudice imposed on the Defendants, who respectively await decisions concerning motions that were filed approximately seven months ago." *Id.* DE

[215, p.4]  "It is inconsistent for plaintiff's counsel to proffer a need for additional time to craft an opposition to Defendants' motions when previous extensions have only resulted in additional motion practice concerning additional extensions."  *Id.* at p.5.  The court suggested that Ms. Pollack's inability to comply with the generous deadlines given in that matter should "give her pause to consider whether she is capable of meeting the demands of representing her respective clients," citing to N.Y. Code of Professional Responsibility D.R. 2-110(B)(3), 2-110(C)(4).  *Id.* The motions to dismiss were deemed submitted unopposed.

District Judge Hurley, in an order filed in January 2007 in *Mugno v. Societe Internationale Telecommunications,* in which Ms. Pollack represented the plaintiff, raised a "cautionary flag as to Plaintiff's Counsel's performance."  2007 U.S. Dist. LEXIS 6573, *44-45 (E.D.N.Y. Jan. 30, 2007).  She had, he noted, "requested six extensions, four of which were untimely," and had also "violated several Court-ordered deadlines."  *Id.*  In an effort to have that plaintiff's case decided on the merits, Judge Hurley had afforded Ms. Pollack "repeated opportunities to correct her deficiencies," but she "persisted with a pattern of requesting untimely extensions and, when granted such extensions, with a pattern of missing those deadlines."  *Id.* He encouraged Ms. Pollack to "take whatever steps are necessary to avoid a repetition" of what had transpired in that case, and suggested that she "may wish to explore available avenues of assistance to aid her in effectively managing her practice and competently and diligently representing her clients."  *Id.*

At his hearing with Ms. Pollack and Ms. Burgie, Judge Sifton made reference to *Spinelli v. Secretary of the Dep't of the Interior*, a case in which Pollack made an untimely motion for

reconsideration,[16] filed two years after the decision that she sought to have reconsidered.  Judge Sifton interpreted the findings of District Judge Bianco, the presiding judge in *Spinelli*, as concluding that Ms. Pollack "had not done what she should have done under the local procedural rules."  *See Burgie* DE [136, p.8].  Judge Bianco, in rendering his decision in *Spinelli*, noted that the court had granted "plaintiff's counsel's repeated requests for extensions of time in various filings" in that case.  *Spinelli v. Secretary of the Dep't of the Interior*, 2006 U.S. Dist. LEXIS 76129, *11 (E.D.N.Y. Oct. 19, 2006).[17]

The court notes the disturbing pattern of Ms. Pollack's conduct demonstrated in those cases and in this one, and joins in the urging of Judges Seybert and Hurley that Ms. Pollack seriously consider her ability to meet the demands of her various commitments within the requirements of the Code of Professional Responsibility, the Federal Rules, the Local Rules, and the Individual Rules of the judges before whom she practices.  Until she does so, of course, Ms. Pollack must be prepared to deal with the repercussions of her choices.

In this action, one such repercussion might be a sanction pursuant to Rule 11 or the inherent powers of the court for filing the frivolous recusal motion.  So that this action can move forward expeditiously, however, the court will not pursue sanctions pursuant to Rule 11(c)(1)(B) or its inherent powers, inasmuch as either approach would require a hearing that would further delay this litigation and that would likely engender another round of missed deadlines and requests for extensions.  The undersigned does, however, caution Ms. Pollack in the strongest

---

[16]Both *Spinelli* and *Capone* involved Pollack's requests that the judges to whom the matters had been reassigned reconsider orders issued by the previous judges.

[17]Judges Seybert, Hurley, Sifton and Bianco all made reference to medical problems that Ms. Pollack had in 2003 and 2004, but she has not raised those problems in this action.

possible terms that such sanctions will be considered in the future if circumstances warranting

them arise.  Further, Ms. Pollack is ordered to serve a copy of this Order on her client, Andrea

Macaluso, no later than April 6, 2007, and to file proof of service with the court by ECF on the

date of service.  Failure to comply with this ruling will result in the consideration of sanctions.

The court now turns its attention to the pending Rule 37 motion.

**The Defendant's Motion for Dismissal Pursuant to Rule 37:**

The defendants have moved pursuant to Rule 37 for sanctions in the form of a

recommendation of dismissal.  DE [40].  The defendants have accurately catalogued the many

failures to comply with the court's orders and deadlines and have demonstrated that sanctions

pursuant to Rule 37 are well warranted. The undersigned cannot, however, recommend that Ms.

Macaluso's complaint be dismissed, because the inescapable conclusion that review of this

action's docket leads to is that it is not Macaluso who is to blame, but Ms. Pollack.  Thus, it will

be Ms. Pollack who is personally sanctioned.

As noted in the order of January 18 (DE [46]), the remedy of dismissal is severe and

should be used only in rare circumstances.  The Second Circuit has indicated that even "in the

case of attorney misconduct such as gross negligence" dismissal would "amount to a windfall to

an adversary to be resorted to only when necessary to preserve the integrity of the judicial

system, or in similar 'extreme circumstances.'" *Litton Sys. Inc. v. American Tel. & Telegraph

Co.,* 700 F.2d 785, 828 (2d Cir. 1983) (quoting *Interconex, Inc. v. Federal Maritime Comm'n,*

572 F.2d 27, 30 (2d Cir. 1978)).  That court further found that "it is difficult to 'visit upon the

client the sins of counsel, absent client's knowledge, condonation, compliance, or causation.'"

*Litton Sys. Inc.,* 700 F.2d at 828 (quoting *Cine Forty-Second Street Theatre Corp. v. Allied*

*Artists Pictures Corp.,* 602 F.2d 1062, 1069 (2d Cir. 1979)).

While Ms. Pollack's overall behavior in the cases cited above certainly rises to the level of "extreme circumstances," the undersigned can only consider the circumstances in this case in determining what sanctions are appropriate. In that regard, although Ms. Pollack's behavior has been undeniably negligent, the court has no reason to believe that Ms. Macaluso has contributed to it. This is different from a situation in which the party herself has refused to appear for a deposition or to produce documents or to answer interrogatories, where dismissal might well be appropriate. The court recognizes, however, that some sanction is demanded and thus Ms. Pollack, not Ms. Macaluso, is ordered to pay the reasonable expenses, including costs and attorneys' fees, incurred by the defendants in regard to the following: (1) the May 30, 2006 motion to compel, DE [13]; (2) the August 2, 2006 letter motion, DE [16], which granted relief to the defendants, albeit not the default judgment that they asked for; (3) the August 30 letter motion, DE [25], necessitated by Pollack's failure to comply with the August 25 production date; (4) defendants' appearance in court on September 12, when Ms. Pollack did not appear; (5) the October 10, 2006 motion, DE [35]; (6) the instant Rule 37 motion, DE [40]; and (6) the costs of making the application for the expenses awarded in connection with the previous 5 events. *See* Fed. R. Civ. P. 37(a) (4)(A).

The defendants shall submit an application for their attorneys' fees and costs, no later than April 17, 2007. Ms. Pollack shall file opposition, if any, no later than May 1, 2007, and the defendants may file a reply by May 15, 2007. The bundling rule will not apply to this application. The defendants' submission shall include an affidavit with appropriate supporting documentation, including but not limited to contemporaneous time records, along with a short

memorandum of law, not to exceed 5 pages.  Ms. Pollack' s opposition shall consist of

corresponding documents, including an affidavit and a memorandum of law not to exceed five

pages.  Legal argument set forth in affidavits will not be considered.  Failure to follow these

directions or the applicable Federal, Local or Individual Rules will result in the rejection of non-

complying documents.

This case is deemed trial ready, and will be tried pursuant to the calendar of District

Judge Spatt.

Dated: Central Islip, New York          **SO ORDERED:**
       April 3, 2007


       /s/ William D. Wall
       WILLIAM D. WALL